UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KELVIN LEON REED,

      Petitioner,

v.                                                                    CASE NO. 6:11-cv-827-Orl-37DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____

**<u>ORDER</u>**

      Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).   Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 7).   Petitioner filed a reply to the response (Doc. No. 10) and an amended reply (Doc. No. 12).

      Petitioner alleges three claims for relief in his habeas petition: (1) trial counsel was ineffective for failing to investigate witnesses and secure evidence for trial; (2) trial counsel was ineffective for failing to locate and interview Jarvis Coleman; and (3) appellate counsel was ineffective for failing to argue that the trial court erred by denying his motion to dismiss the charges on double jeopardy grounds and by denying

his motion for mistrial.[1]   For the following reasons, the petition for writ of habeas corpus is granted as to Claim 2.   All other claims are denied.

## I.    *Procedural History*

Petitioner was charged by information with two counts of DUI manslaughter (counts one and two), two counts of vehicular homicide with failure to render aid or give information (counts three and four), two counts of leaving the scene of an accident with death (counts five and six), and two counts of driving with a suspended license causing serious bodily injury or death (counts seven and eight).   A jury trial was held, and during deliberations, the jury twice notified the trial court that they were unable to reach a verdict.   After the trial court read the jury an *Allen*[2] charge, the jury returned a partial verdict, wherein they acquitted Petitioner of counts one and two.   The State entered a nolle prosequi with respect to counts five and six.   The trial court declared a mistrial with respect to counts three, four, seven, and eight.

Petitioner was retried on counts three, four, seven, and eight.   Petitioner testified at trial but defense counsel did not call any other witnesses.   The trial court did not ask Petitioner whether there were any other witnesses he wished to call.   The

---

[1]The federal habeas petition contains seven grounds for relief (Doc. No. 1). However, in his amended reply, Petitioner concedes that he is not entitled to relief on grounds three, four, five, and six (Doc. No. 12).   Accordingly, the Court will not address these claims.

[2]*Allen v. United States*, 164 U.S. 492 (1896) (approving the use of a special jury instruction after lengthy deliberations in which no decision can be made).   Florida courts have held it is proper to give an *Allen* charge to a deadlocked jury.   *Young v. State*, 711 So. 2d 1379, 1379 (Fla. 2d DCA 1998).

jury convicted Petitioner as charged.   Prior to sentencing, the trial court dismissed the convictions for counts seven and eight.   The trial court sentenced Petitioner to two consecutive terms of 17.5 years for counts three and four. Petitioner appealed, and the Fifth District Court of Appeal affirmed *per curiam*.

Petitioner filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel with the Fifth District Court of Appeal.   The appellate court denied the petition without discussion.   Petitioner then filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, alleging four claims for relief.   The trial court denied the motion in part and conducted an evidentiary hearing on ground two, Petitioner's claim that trial counsel was ineffective for failing to locate, interview, and call Jarvis Coleman ("Coleman") as a witness at trial.   The trial court appointed counsel to represent Petitioner at the evidentiary hearing.   Petitioner's counsel called Coleman and defense counsel Thomas B. Luka ("Luka") to testify regarding the claim.   Petitioner also testified at the hearing. After considering the testimony of these witnesses, trial court denied Petitioner's remaining claim.   Petitioner appealed only the denial of ground two.   The Fifth District Court of Appeal affirmed *per curiam*.

## II.   *Legal Standards*

### A.   *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to

a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."   *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."   *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).   The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.   Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly,

habeas relief is appropriate only if that application was "objectively unreasonable."[3] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.   Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.   *Id.* at 687-88.   A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.   *Id.* at 689-90.   "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of

---

[3] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court.   *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III. *Analysis*

### A. *Claim One*[4]

---

[4]The Court notes that this claim is unexhausted because Petitioner did not raise the claim on appeal from the denial of his Rule 3.850 motion. *See Cortes v. Gladish*, 216 F. App'x 897, 899-900 (11th Cir. 2007) (failure to raise claims on direct appeal following the denial of a Rule 3.850 motion after an evidentiary hearing constitutes a waiver of those issues). However, Respondents asserted that all of Petitioner's claims, with the exception of ground five, are exhausted. Thus, it appears Respondents have waived the exhaustion requirement with respect to this claim. *McNair v. Campbell*, 416 F. 3d 1291, 1304-05 (11th Cir. 2005). To the extent the Court may *sua sponte* invoke exhaustion, the Court declines to do so. *See Esslinger v. Davis*, 44 F.3d 1515, 1524 (11th Cir. 1995) (a "district court may invoke the [exhaustion] bar *sua sponte* [only] where . . . requiring the petitioner to return to state court to exhaust his claims serves an

Petitioner alleges trial counsel was ineffective for failing to investigate witnesses and secure evidence for trial (Doc. No. 1 at 16).   Petitioner asserts counsel should have impeached State witness Willie Richards' ("Richards") testimony that he was with Petitioner when the crimes were committed, and they stopped at a Citgo gas station, where Petitioner purchased rubbing alcohol which he used to wipe down the interior of the vehicle.   *Id.* at 16-17.   Petitioner maintains that counsel should have retrieved the store security tapes and sales receipts, which would demonstrate he was not present at the gas station on the night the crimes were committed.   *Id.* at 17.   Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. I at 28).   The trial court summarily denied the claim pursuant to *Strickland*.   *Id.* at 138-39.

Petitioner has not demonstrated that he is entitled to relief on this claim.   The facts at trial established that Richards met Petitioner, whom he had known for approximately three years, after leaving a night club (App. B at 36-37).   Richards had been drinking alcohol and did not want to drive home.   *Id.* at 36-38.   Richards agreed to let Petitioner use his car if he first dropped Richards off at home.   *Id.*   According to Richards, after leaving downtown Orlando, Petitioner and Richards picked up Coleman and gave him a ride home.   *Id.* at 38.   Richards testified Petitioner drove the vehicle at speeds in excess of 100 miles per hour, and after dropping off Coleman, hit two pedestrians, who later died.   *Id.* at 39-44).

important federal interest").

Despite Petitioner's contentions, Richards did not state that Petitioner stopped at a Citgo gas station to purchase rubbing alcohol in his statement to the Florida Department of Law Enforcement ("FLDE"), his deposition, or at the first trial (App. I at 155-56, 159-64; App. C at 35).   It was not until the second trial that Richards testified regarding the Citgo gas station and the purchase of rubbing alcohol (App. B at 45-46). This testimony was not consistent with Richards' testimony at the first trial, nor was it consistent with the testimony of Patterson (App. C at 35-42; 78-81).   On cross examination, defense counsel questioned Richards as to why he had never previously testified about the Citgo gas station and the purchase of rubbing alcohol.   *Id.* at 65.   It is clear that trial counsel was not aware Richards would accuse Petitioner of stopping at a Citgo gas station to purchase rubbing alcohol until Richards testified at the second trial.   Thus, counsel will not be deemed to be ineffective for failing to investigate this evidence when the information was not known to him prior to the second trial.

Furthermore, although Jessica Patterson ("Patterson"), a friend of Richards who saw both men after the accident occurred, testified at the first trial that Petitioner asked her if she had rubbing alcohol (App. C at 78-81), Patterson did not testify that Petitioner purchased rubbing alcohol from the Citgo gas station while she was with him. *Id.* at 78-81.   At the second trial, Patterson again testified that prior to her driving Richards and Petitioner home, Petitioner asked for rubbing alcohol (App. B at 82-84).   Patterson gave Petitioner rubbing alcohol. *Id.* at 84.   Patterson also testified that she stopped at a Citgo gas station but stated that neither Petitioner nor Richards exited the vehicle.   *Id.*

at 84, 89.   On cross examination, Patterson testified that Petitioner took the bottle of rubbing alcohol with him after she drove him to his home.   *Id.* at 107-08.   Patterson did not testify that Petitioner used the rubbing alcohol.   *Id.* at 107-08.   Therefore, Richards' testimony regarding the purchase of rubbing alcohol was contradicted in part by Patterson's testimony, as well as by his testimony at the first trial (App. C at 35-42).

Although there is no indication that defense counsel requested the Citgo's security tapes and sales receipts, counsel thoroughly explored the issue of whether Petitioner purchased or used rubbing alcohol during his cross examination of Patterson and Richards.   Petitioner has not shown that counsel's actions amounted to deficient performance, nor has he demonstrated that had counsel performed additional investigation on this issue, the result of the trial would have been different.   The state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law nor was it "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   Claim one is denied pursuant to § 2254(d).

### B.    *Claim Two*

Petitioner claims trial counsel was ineffective for failing to locate and interview Coleman (Doc. No. 1 at 20-21).   In support of this claim, Petitioner maintains that Coleman was in the nature of an alibi witness who would have testified he never saw Petitioner on the date the crimes were committed and was not driven home by Richards and Petitioner.   *Id.*   Petitioner raised this claim in his Rule 3.850 motion (App. I at

32-33).   The trial court held an evidentiary hearing on this claim.   *Id.* at 137.   The state court judge who presided over the Rule 3.850 hearing was not the same judge who presided over Petitioner's trial (App. B, C, and I).

At the evidentiary hearing, Coleman testified that he knew both Petitioner and Richards prior to July 12, 2004 (App. I, Evidentiary Hearing Transcript pages 8-9). Coleman testified that he was not a passenger in a vehicle with Petitioner and Richards on or around that date.   *Id.* at 9-10.   Coleman stated that he lived in Orlando at the time of trial at the same address where he has lived for fifteen years.   *Id.*   Coleman testified that had someone contacted him, he would have testified at trial.   *Id.* at 10-11.

Defense counsel Luka testified that the theory of defense was that Petitioner did not know Richards and was not with Richards when the crimes occurred.   *Id.* at 29. Most significantly, Luka testified that he never attempted to contact Coleman or have him testify in the case.   *Id.* at 36.   Even though he was listed as a state witness in both trial 1 and trial 2, the State did not call Coleman as a witness in either trial.   Luka stated the following with respect to his decision:

> I did not want to risk defeating th[e] defense by coming up with evidence or eliciting evidence or testimony from an individual who would place either Mr. Reed at any time during that evening with either Mr. Richardson [sic] or with the vehicle.   And so for that reason, I decided tactically that it would not benefit Mr. Reed in any way if Mr. Coleman was called to testify.

*Id.*   Luka also testified that while Coleman was listed as a potential witness, Petitioner told Luka that he did not know Coleman or know what Coleman's testimony would be if he was called as a witness.   *Id.* at 40, 42.   On cross examination, Luka was shown an

FDLE investigation report which indicated that the officers could not locate Coleman to question him.   *Id.* at 45.   Luka stated he recalled that attempts were made to contact Coleman but was unaware if the State was successful in their attempts to locate Coleman prior to trial.   *Id.* at 46.

Petitioner testified that he knew Coleman before the crimes occurred.   *Id.* at 51. Petitioner testified that prior to the first trial, he asked Luka to contact Coleman.   *Id.* Petitioner again asked Luka to contact Coleman prior to the second trial.   *Id.* at 52. Petitioner stated that he never denied knowing Coleman.   *Id.*   Petitioner admitted on cross examination that he never tried to contact Coleman even though he was released from jail prior to trial.   *Id.* at 54.   Petitioner testified that he had a friend named "Duck" look for Coleman in the neighborhood, but Duck was unsuccessful in locating him.   *Id.* at 55.   Finally, Luka was recalled by the State, and he testified Petitioner never asked him to call Coleman as a witness at either trial.   *Id.* at 69-70.

The trial court denied the instant claim pursuant to *Strickland*, finding Luka's testimony was credible, and he offered a reasonable explanation as to why he did not call Coleman as a witness.   *Id.* at 192-93.   Moreover, the trial court concluded that Petitioner had not demonstrated prejudice because Coleman was not a credible witness, and his testimony was not helpful to the defense.   *Id.*   The Fifth District Court of Appeal *per curiam* affirmed the denial of this claim (App. K).

The Supreme Court of the United States has held that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually

11

unchallengeable." *Strickland*, 466 U.S. at 690-91.   The Court further stated "strategic choices made after less than complete investigation are reasonable . . . to the extent . . . professional judgments support the limitations on investigation.   In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."   *Id.*   The Court acknowledges and agrees that "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.*   However, this is not such a case.[5]

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [this Court] will seldom, if ever, second guess." *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (citation omitted).   The expectation, however, is that defense counsel must conduct a pretrial investigation that is reasonable under the circumstances presented in the case.   *Futch v. Dugger*, 874 F.2d 1483, 1486 (11th Cir. 1989).

In the instant case, Coleman was listed as a state witness in both the first and second trial.   Of significant import, the State did not call Coleman at the first or second trial, raising the question as to why the State was not using this witness.   Defense counsel testified that he did not want to risk obtaining evidence or testimony from a

---

[5] The facts here are likewise apposite to those in *Pooler v. Sec'y, Fla. Dep't of Corr.*, No. 12-12059, 2012 WL 6555012, at *2 (11th Cir. Dec. 17, 2012) where the facts demonstrated that defense counsel retained an experienced investigator and instructed him to find "anything and everything" he could.

person who might place Petitioner with Richards or put Petitioner in the vehicle, so he decided, without knowing the content of Coleman's testimony, to not investigate this witness. Although the manner of investigating or presenting a defense is a matter of strategy, it may be considered to be deficient performance on the part of counsel if the "chosen course, in itself, was unreasonable." *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) (internal quotation marks omitted).

In a claim of ineffective assistance of counsel for failure to investigate and call a witness, the burden to show prejudice may be heavy or insurmountable due to the fact that "often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1009 (11th Cir. 2006) (quoting *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980)). Here the Court has more than a speculative allegation as to what Coleman would have testified to at trial; it is known, based on his evidentiary hearing testimony, that Coleman would have testified that he was not a passenger in a vehicle with Petitioner and Richards on or around the date at issue.

If defense counsel Luka had spoken with Coleman prior to trial and decided that Coleman would not make a credible witness at trial or would have presented harmful testimony at trial, then this type of strategic decision by counsel would stand scrutiny under the performance prong of *Strickland*. In this instance, however, defense counsel did not speak with the witness; therefore, he never had the information to make the determination as to whether or not the witness would have been helpful or harmful to

13

his trial strategy.   The Court recognizes that it "must accept the state court's credibility determination and thus credit [Luka's] testimony over [Petitioner's]," applying the statutory presumption of correctness under § 2254(d) to the state court's credibility determination.   *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998).   Although the trial court found Luka's testimony credible and that he offered a reasonable explanation as to why he did not call Coleman as a witness, whether Luka's "tactical decision was reasonable, and therefore within the wide range of competent professional assistance, is an issue of law."   *Dingle v. Sec'y for the Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (citation omitted).   Thus, this Court must consider whether the state court's decision that defense counsel was not ineffective is contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

The Court finds that Luka's strategic choice to forego calling Coleman as a witness was not preceded by a reasonable investigation and hence was unreasonable. While Luka testified that he did not want to hurt Petitioner's defense by potentially eliciting testimony from Coleman that would place Petitioner in the vehicle the night the crimes were committed, counsel was under no duty to call Coleman as a witness at trial.   Further, Luka was under no ethical obligation to disclose to the State any conversations that he had with Coleman because there is no reverse-*Brady*[6] rule

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963) (holding the prosecutor's failure to disclose favorable evidence to an accused violates due process where the evidence is

14

imposing upon a criminal defendant an obligation to produce inculpatory material. *See United States v. West*, 790 F. Supp. 2d 673, 681-82 (N.D. Ill. 2011); Fla. R. Crim. P. 3.220(d) (obligating a defendant to disclose only written or recorded witness statements whom the defendant expects to call at trial or hearing); *State v. McFadden*, 50 So. 3d 1131, 1134 (Fla. 2010) (disclosure of a witness's unrecorded oral statement is not required unless that statement materially alters a prior written or recorded statement previously disclosed).   Thus, Luka could have spoken to Coleman to determine what his testimony would be without defeating Petitioner's defense.   Certainly, "strategy" may include a decision not to investigate, *Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994), "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."   *Id.* at 386; *cf. Harris v. Dugger*, 874 F.2d 756, 763 (11th Cir. 1989) ("[D]ecisions [not to investigate] must flow from an informed judgment.").

Contrary to the state court's determination, Luka could not make a reasonable strategic decision regarding whether he should call Coleman as a witness without first investigating to determine what Coleman's testimony would consist of if he was called as a witness at trial.   *See Strickland*, 466 U.S. at 690-91.   Added to the equation is the fact that, as noted *supra*, Coleman was listed as a state witness subject to call; the first

---

material to guilt or to punishment, irrespective of the good faith of the prosecutor).

trial resulted in an acquittal on two counts and a hung jury on the remainder.   Taken together, it seems clear that *no* reasonable lawyer could have failed to at least attempt to contact Coleman to ascertain what he knew.   Because the defendant maintained that he was not driving the vehicle (he so testified at the first and second trial (App. C at 247, App. B at 320), if Coleman denied Richards' version of the events, it seems quite likely that this testimony would be helpful to the defense, although the state court found otherwise.   Professional judgment does not support Luka's limitation on investigating this potential witness.   *Strickland*, 466 U.S. at 690-91.   No reasonable lawyer would have failed to do so.   *Rogers*, 13 F.3d at 386.   The Court therefore concludes that Luka's failure to investigate Coleman as a potential witness amounted to deficient performance.

Since the Court has found that counsel's decision not to locate and interview Coleman was unreasonable, the Court's inquiry is now whether the result of the trial would have been different if Coleman had testified. [7]   In sum, this Court must determine whether the state court's ruling was an unreasonable application of federal

---

[7] To the extent Petitioner alleges that counsel's actions constitute *per se* ineffective assistance of counsel, and thus, prejudice should be presumed, the Court disagrees.   In *United States v. Cronic*, 466 U.S. 648, 658-62 (1984), the Supreme Court of the United States held that counsel's failure to subject the State's case to meaningful adversarial testing or a complete denial of counsel at a critical stage in the proceedings results in a presumptively unreliable process and thus, prejudice is presumed.   In the instant case, counsel did not wholly fail to subject the State's case to adversarial testing, nor did counsel fail to represent Petitioner at a critical stage in the proceedings.   Counsel's actions, therefore, cannot be viewed as *per se* ineffective assistance, and prejudice will not be presumed.

law.   This Court accepts that this standard is difficult to meet, and that "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."   *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

This means, that with respect to the prejudice prong of the *Strickland* test, Petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* teaches that a reasonable probability is a "probability sufficient to undermine confidence in the outcome."   *Strickland*, 466 U.S. at 694.   Ultimately, the question before the Court is whether counsel's error was so serious that it deprived Petitioner of a trial with a reliable result.   *Harrington*, at 787-88 (citation omitted).

The Supreme Court of the United States, in *Porter v. McCollum*, 558 U.S. 30 (2009) (per curiam), in addressing a defense counsel's failure to uncover and present mitigating evidence in a death penalty case, found that the Florida Supreme Court's decision that the defendant was not prejudiced by such failure was an unreasonable application of federal law, warranting habeas corpus relief.   The Supreme Court said: "[t]he Florida Supreme Court's decision that Porter was not prejudiced by his counsel's failure to conduct a thorough-or even cursory-investigation is unreasonable."   *Id.* at 454.   In reaching this decision, the Supreme Court concluded that the Florida Supreme

Court "either did not consider or unreasonably discounted the mitigation evidence adduced in the postconviction hearing."   *Id.*

Similarly, this Court is faced with a record where the trial court did not consider or unreasonably discounted the evidence presented in the state evidentiary hearing when considered in combination with the totality of the evidence that was before the jury at trial.[8]   *Rizo v. United States*, 446 Fed. App'x 264, 266 (11th Cir. 2011) (per curiam) (not selected for publication in the Federal Reporter) (recognizing that the court must consider the totality of the evidence before the judge or jury in determining whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).   Indeed, "[a] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."   *Id.* (citation omitted).

Although Coleman's testimony would not have wholly exculpated Petitioner as he suggests, Petitioner asserts, and Coleman's testimony at the evidentiary hearing supports the assertion, that the witness would have testified that he was not a passenger in a vehicle with Petitioner and Richards.   This testimony would have impeached Richards' testimony regarding who was present in the vehicle as well as other events of the evening.   Reviewing Coleman's testimony at the evidentiary hearing in combination with the trial transcript, "considered as a whole," conclusively

---

[8] Of great import, the state court judge who presided over the evidentiary hearing was not the same judge who presided over the trials.

18

establishes that Luka's failure to pursue the potential witness prejudiced the defense. *Id*.

Thus, Coleman's testimony would have cast doubt upon Richards' version of the events as well as the reports by Patterson.   Recognizing, as necessary, that the Court is not in a position to evaluate the credibility of witnesses from the cold record, it is nonetheless objectively clear that Richards and Patterson gave conflicting versions of the critical events of the evening.   Thus, Coleman's testimony would have also called into question the credibility of Patterson.   While Patterson testified that Petitioner admitted hitting the victims with the vehicle she also admitted initially giving the police a false name and statement that was partially untrue.   Patterson was Richards' friend and did not know Petitioner prior to the night the crimes were committed.   Therefore, Patterson would have reason to give testimony that would corroborate Richards' testimony, as he was the only other person present in the vehicle at the time of the offenses and had motive to accuse Petitioner of committing the offenses.   Accordingly, the Court concludes that the state court judge unreasonably discounted the impact that Coleman's testimony would have had on the jury.   It was "not reasonable to discount entirely the effect that this testimony might have had on the jury[.]"   *Sochor v. Sec'y, Dep't of Corr.*, 685 F.3d 1016, (11th Cir. 2012) (citation omitted).

Apart from the issue of Coleman, there is also the fact that the State presented additional evidence at the second trial to establish Petitioner's guilt.   Patterson testified

that Petitioner made the following statement to her: "man, I am f----d up.   I am f----d up.   I done [sic] hit these people.   I'm f----d" (App. B at 99).   Patterson, as noted previously, had a prior relationship with Richards and thus perhaps motive to fabricate. Patricia Payne ("Payne"), corporal with the Florida Highway Patrol, testified that Patterson told her Petitioner mumbled under his breath "I messed up. I messed up. I've killed those people.   I messed up.   *Id.* at 169.   This testimony was not adduced by the State at the first trial (App. C at 162). Further, Petitioner's alleged admission to Patterson was uncorroborated from any other source.

The record reveals that the judge at the evidentiary hearing evaluated the impact of Coleman's testimony in a vacuum, without taking into full consideration Coleman's testimony juxtaposed with that of Patterson and Richards, the two principle prosecution witnesses.   Indeed, when the court summarily discounted the impact of Coleman's testimony, it failed to assess his testimony in conjunction with the conflicting evidence produced at trial and consider the potential impact of Coleman's testimony on the jury.   Taking into consideration the totality of the evidence before the jury and the potential impact of Mr. Coleman's testimony, the Court is convinced that the jury's verdict has been undermined and confidence in the outcome has been sufficiently eroded.   The Court concludes that counsel's failure to investigate the witness prejudiced Petitioner's defense.   There is a reasonable probability, therefore, that the result of the trial would have been different absent counsel's deficient performance.

Accordingly, the state court's denial of this claim was contrary to, or an

objectively unreasonable application of *Strickland. See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1125-26 (11th Cir. 2012) (noting that although claims of ineffective assistance of counsel are mixed questions of law and fact that are reviewed *de novo*, a federal court does not apply *Strickland de novo* but rather reviews the application of *Strickland* through "the additional prism of AEDPA deference.") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011)).   Thus, even under this doubly deferential standard, this Court determines that the state court's application of the *Strickland* standard was unreasonable.   *Id*.   This claim is granted pursuant to § 2254(d).

### C.    *Claim Seven*

Petitioner claims appellate counsel was ineffective for failing to argue that the trial court erred by denying (1) his motion to dismiss the charges and (2) his motion for mistrial after a trial observer made an outburst in court.   Petitioner raised these claims in his state habeas petition filed with the Fifth District Court of Appeal (App. F).   The appellate court denied the claims without discussion (App. H).

To demonstrate ineffective assistance of appellate counsel, a petitioner "must show that counsel's performance was so deficient that it fell below an objective standard of reasonableness as well as demonstrate that but for the deficient performance, the outcome of the appeal would have been different."   *Ferrell v. Hall*, 640 F.3d 1199, 1236 (11th Cir. 2011).   In order to establish prejudice, a court must first review the merits of the omitted claim.   *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991).   Counsel's performance will be deemed prejudicial if the court finds that the "neglected claim

would have a reasonable probability of success on appeal."   *Id.*

### 1.    *Motion to Dismiss Charges*

After Petitioner was acquitted of the DUI manslaughter counts and a mistrial was declared with respect to the vehicular homicide and driving with a suspended license counts, defense counsel moved to dismiss the remaining charges (App. A at 2-3). Counsel argued that a retrial would violate double jeopardy.   *Id.*   The trial court denied Petitioner's motion to dismiss.   *Id.* at 159-61.

The Supreme Court of the United States has held that collateral estoppel prevents an issue that has been determined by a valid judgment from being relitigated by the same parties in a future lawsuit.   *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).   The Court further stated:

> [w]here a previous judgment of acquittal [in a criminal case] was based upon a general verdict, . . . a court [must] examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter [sic], and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.

*Id.* at 444 (quotation omitted).   "To determine whether collateral estoppel applies in a criminal proceeding, courts engage in a two-part inquiry": (1) the court must ascertain what facts were necessarily determined during the acquittal at the first trial; and (2) the court must decide whether the facts determined as part of the prior acquittal are an essential element of the offense charged in the subsequent proceeding.   *United States v. Valdiviez-Garza*, 669 F.3d 1199, 1201 (11th Cir. 2012) (citing *United States v. Ohayon*, 483 F.3d 1281, 1286 (11th Cir. 2007); *United States v. Brown*, 983 F.2d 201, 202 (11th Cir.

1993)).    In making a determination regarding what facts were found in the first trial, a court must decide "whether the jury's verdict of acquittal was based upon reasonable doubt about a single element of the crime which the court can identify." *Id.* (citation omitted).

Petitioner contends that the jury's verdict of acquittal with respect to the DUI manslaughter counts necessarily included a determination that Petitioner was not the driver of the vehicle which was the cause of the victims' deaths.    The elements of DUI manslaughter are (1) the defendant is under the influence of alcoholic beverages or chemical substances to extent that person's normal faculties are impaired; (2) the defendant had a blood alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood; (3) the defendant operated a vehicle; and (4) by reason of such operation, caused the death of a human being.    § 316.193(1), (3)(c)(3), Fla. Stat. (2004).    The elements of vehicular manslaughter are (1) the defendant operated a motor vehicle in a reckless manner likely to cause death; and (2) such operation resulted in the death of a human being. § 782.071, Fla. Stat. (2004).    Thus, DUI manslaughter requires an additional finding beyond a reasonable doubt that a defendant is intoxicated above the legal limit while operating a vehicle.

In the instant case, the jury acquitted Petitioner of DUI manslaughter but could not reach a verdict with respect to the remaining counts.    Therefore, if the jury had found that Petitioner was not driving the vehicle, they also would have acquitted Petitioner of the vehicular manslaughter and driving with a suspended license counts.

Because the jury did not do so, the jury necessarily found that the State had not proved that Petitioner was under the influence while driving so as to warrant a conviction for DUI manslaughter.   There was no evidence presented at the first trial of what Petitioner's blood alcohol level was at the time of the crash; instead the parties stipulated that Petitioner's blood alcohol level four hours later was 0.14 grams of alcohol per 100 milliliters of blood (App. C at 22).

The Court concludes the jury did not necessarily determine in the first trial that Petitioner was not the driver of the vehicle.   Therefore, the State was not collaterally estopped from retrying Petitioner on the remaining counts.   Accordingly, appellate counsel's failure to raise this claim on direct appeal did not result in prejudice because the claim would not have been meritorious.   Thus, this claim is denied.

### 2.   *Motion for Mistrial*

During the second trial, Latisha Brown ("Brown"), a spectator at the trial, made an improper comment during Patricia Payne's testimony (App. B at 173).   Brown, who was Petitioner's girlfriend at the time, stated "You swore to tell the truth, liar."   *Id.* The jury was excused from the courtroom, and defense counsel moved for a mistrial.   *Id.* at 173-75.   The trial court reserved ruling on the motion but instructed the jury to disregard the outburst.   *Id.* at 180.   The trial court later denied the motion, stating that Brown's outburst did not vitiate the entire trial.   *Id.* at 301-02.

Pursuant to Florida law, a motion for mistrial should be granted only when the error was so prejudicial and fundamental that it denied the defendant a fair trial.   *See*

*Buenoano v. State*, 527 So. 2d 194, 198 (Fla. 1988).   The Eleventh Circuit has held "the decision on whether to grant a mistrial lies within [the trial court's] sound discretion" given that "the trial judge is in the best position to evaluate the prejudicial effect of a spectator's outburst."   *Messer v. Kemp*, 760 F.2d 1080, 1087 (11th Cir. 1985).

In light of the trial court's curative instruction, Petitioner has not shown that the trial court abused its discretion by denying the motion for mistrial.   *See Kendrick v. Sec'y, Dep't of Corr.*, No. 6:10-cv-333-Orl-31KRS, 2011 WL 4529638, at *3 (M.D. Fla. Sept. 30, 2011) (finding the trial court's denial of a motion for mistrial when the victim screamed during trial that the defendant was a monster who left her to die was not error in light of the curative instructions given to the jury).   Thus, Petitioner cannot show that counsel's failure to raise this claim on direct appeal resulted in prejudice. The state court's denial of this claim was not objectively unreasonable.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   *Certificate of Appealability*

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").   28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances. The Court will deny Petitioner a certificate of appealability as to Claims 1, 3,4,5,6 and 7.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     Claim two of the Petition for Writ of Habeas Corpus filed by Kelvin Leon Reed (Doc. No. 1) is **GRANTED**.

2.     The writ of habeas corpus will be conditionally **GRANTED** with regard to claim two, for the reasons discussed above, within **NINETY (90) DAYS** from the date of this Order, unless the State of Florida grants Petitioner a NEW TRIAL in the state court consistent with the law.

3.     Petitioner is **DENIED** a Certificate of Appealability on Claims 1, 3, 4, 5, 6, and 7.

4.     The Clerk of Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 16th day of January, 2013.

ROY B. DALTON JR.
United States District Judge

26

Copies to:
OrlP-3 1/16
Counsel of Record
Kelvin Leon Reed